STEPHEN R. BASSER (121590)
BARRACK, RODOS & BACINE
One America Plaza
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

LEONARD BARRACK
DANIEL E. BACINE
MARK R. ROSEN (139506)
CHAD C. CARDER
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

Lead Counsel For Lead Plaintiffs and the
Proposed Settlement Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CARL WALDREP, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VALUECLICK, INC., JAMES R. ZARLEY, and SAMUEL J. PAISLEY, <br><br> Defendants. | CASE NO. CV 07-5411 DDP (AJWx) <br><br> The Hon. Dean D. Pregerson <br><br> <u>CLASS ACTION</u> <br><br> NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:     November 9, 2009 <br> TIME:     10:00 a.m. <br> CRTM:    3 <br> JUDGE:    Hon. Dean D. Pregerson |

1

# TABLE OF CONTENTS

2

3   I.      INTRODUCTION ........................................................................ 1

4   II.     DESCRIPTION OF THE LITIGATION ....................................... 3

5   III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
             ADEQUATE .............................................................................. 7

6

     A.   The Standards for Judicial Approval Of Class Action Settlements ................ 7

7

     B.   The Settlement Is Entitled To A Presumption Of Reasonableness ................. 9

8

     C.   An Analysis Of The Applicable *Officers for Justice* Factors Confirms That
9           The Settlement Is Fair, Reasonable And Adequate .......................................... 10

10       1.   The Strength Of Plaintiff's Case ........................................................ 10

11       2.   The Risk, Expense, Complexity And Likely Duration Of Further
               Litigation ............................................................................................ 13

12

13       3.   The Risk of Maintaining Class Action Status Throughout The Trial ........ 15

14       4.   The Amount Offered In Settlement ..................................................... 16

15       5.   The Extent Of Discovery Completed, And The Stage Of Proceedings .... 17

16       6.   The Experience And Views Of Counsel ............................................. 17

       7.   The Reaction Of Class Members To The Proposed Settlement ................ 18
17

18  IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ...... 19

19  V.     THE CLASS SHOULD BE CERTIFIED UNDER RULES 23(A) AND
           (B)(3) FOR PURPOSES OF THE SETTLEMENT ..................................... 21

20  VI.   CONCLUSION ......................................................................... 22

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ...................................................................................21

*Anixter v. Home-Stake Prod. Co.,*
  77 F.3d 1215 (10th Cir. 1996)...................................................................14

*Backman v. Polaroid Corp.,*
  910 F.2d 10 (1st Cir. 1990) ...............................................................12, 15

*Berger v. Ludwick,*
  15 Fed. Appx. 528 (9th Cir. 2001) .............................................................11

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
  603 F.2d 263 (2d Cir. 1979)........................................................................15

*City of Philadelphia v. Fleming Co., Inc.,*
  264 F.3d 1245 (10th Cir. 2001)...................................................................11

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992)........................................................................7

*Colin v. Onyx Acceptance Corp.,*
  31 Fed. Appx. 359 (9th Cir. 2002) .............................................................11

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977).....................................................................13

*DeMarco v. DepoTech Corp.,*
  33 Fed. Appx. 260 (9th Cir. 2002) .............................................................11

*Elliott Assocs., L.P. v. Hayes,*
  No. 01-7078, 2002 U.S. App. LEXIS 1474 (2d Cir. Jan. 18, 2002)...................11

*Gallagher v. Abbott Labs.,*
  269 F.3d 806 (7th Cir. 2001).......................................................................11

*Geffon v. Micrion Corp.,*
  249 F.3d 29 (1st Cir. 2001) .........................................................................12

*Gompper v. VISX, Inc.,*
  298 F.3d 893 (9th Cir. 2002).......................................................................11

*Greebel v. FTP Software, Inc.,*
  939 F. Supp. 57, 63-64 (D. Mass. 1996) ......................................................9

*In re Advanta Corp. Sec. Litig.,*
  180 F.3d 525 (3d Cir. 1999).......................................................................11

ii

*In re Apollo Group, Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
(D. Ariz. Aug. 4, 2008) ....................................................................14

*In re Broadcom Corp. Sec. Litig.*,
Case No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41983
(C.D. Cal. Sept. 12, 2005).......................................................... *passim*

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995) ...................................................15

*In re Comshare, Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999)......................................................11, 12

*In re Digi Int'l, Sec. Litig.*,
14 Fed. Appx. 714 (8th Cir. 2001) ..................................................12

*In re GNC Shareholder Litig.*,
668 F. Supp. 450 (W.D. Pa. 1987) ...................................................10

*In re Heritage Bond Litig.*,
MDL CASE NO.: 02-ML-1475 DT,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................10

*In re JDS Uniphase Sec. Litig.*,
Case No. 4:02-cv-01486-CW (N.D. Cal.)........................................14

*In re Merck & Co., Inc. Sec. Litig.*,
432 F.3d 261 (3rd Cir. 2005) ...........................................................11

*In re NASDAQ Market-Makers Antitrust Litig.*,
No. 94 Civ. 3996 RWS, 2000 U.S. Dist. LEXIS 304
(S.D.N.Y. Jan. 18, 2000)...................................................................19

*In re Omnicom Group, Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008)...............................................12

*In re Omnivision Techs.*,
559 F. Supp.2d 1036 (N.D. Cal. 2007) .....................................7, 8, 18

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) ...............................................................19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................21

*In re Retek Inc. Sec. Litig.*,
621 F. Supp. 2d 690 (D. Minn. 2009) ...............................................12

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)..............................................................11

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)....................................................14

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Xoma Corp. Sec. Litig.*,
   Master File No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502
   (N.D. Cal. July 14, 1992) ............................................................... *passim*

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ........................................................... 11

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir.) .................................................................... 11

*Levinson v. Prentice-Hall, Inc.*,
   868 F.2d 558 (3d Cir. 1989) ........................................................... 12

*Levitin v. PaineWebber, Inc.*,
   159 F.3d 698 (2d Cir. 1998) ........................................................... 12

*Linney v. Cellular Alaska Part.*,
   151 F.3d 1234, 1239 (9th Cir. 1998) ............................................. 16

*Longman v. Food Lion, Inc.*,
   197 F.3d 675 (4th Cir. 1999) .......................................................... 12

*McPhail v. First Command Fin. Planning, Inc.*,
   Case No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544
   (S.D. Cal. Mar. 30, 2009) ............................................................... 16

*Metzler v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................ 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615, 625 (9th Cir. 1982) .................................................... 8

*Phillips v. LCL Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) .......................................................... 12

*Regents of the Univ. of Cal. v. Credit Suisse First Boston USA, Inc.*,
   482 F.3d 372 (5th Cir. 2007) 2008 U.S. LEXIS 1120 (Jan. 22, 2008) .............. 15

*Robbins v. Kroger Props.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................ 12, 15

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .......................................................... 11

*Silver v. H&R Block*,
   105 F.3d 394 (8th Cir. 1997) .......................................................... 12

*Theoharous v. Fong*,
   256 F.3d 1219 (11th Cir. 2001) ...................................................... 11

*Trans World Airlines, Inc. v. Hughes*,
   312 F. Supp. 478 (S.D.N.Y. 1970) ................................................. 15

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................ 7

iv

*W. Va. v. Chas. Pfizer & Co.,*
  314 F. Supp. 710 (S.D.N.Y. 1970),.....................................................................10

*Ward v. Succession of Freeman,*
  854 F.2d 780 (5th Cir. 1988)..........................................................................14

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982).............................................................................21

*Yourish v. Cal. Amplifier,*
  191 F.3d 983 (9th Cir. 1999)..........................................................................11

**STATUTE, RULES & REGULATIONS**

Federal Rules of Civil Procedure

Rules 23(a) and (b)(3) .......................................................................................21

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 9, 2009, at 10:00 a.m., or as soon thereafter as counsel  may be heard, in the Courtroom of the Honorable Dean Pregerson, United States District Court, 312 Spring Street, Los Angeles, California, Lead Plaintiffs Laborers' International Union of North America National (Industrial) Pension Fund and the LIUNA Staff & Affiliates Pension Fund (collectively the "LIUNA Funds" or "Lead Plaintiffs") will and hereby do move for entry of an order granting final approval of the settlement of the above captioned matter with Defendants ValueClick, Inc.  ("ValueClick" or the "Company"), James R. Zarley, and Samuel J. Paisley (collectively, "Defendants") as set forth in the Stipulation and Agreement of Settlement dated June 11, 2009 (the "Settlement"); and approving the proposed Plan of Allocation of the Net Settlement Fund.

## I.     INTRODUCTION

Lead Plaintiffs and Lead Counsel have succeeded in obtaining a significant recovery for the benefit of the Class in the amount of $10 million in cash.  This Settlement was negotiated under the auspices of a highly-regarded mediator, the Hon. Edward A. Infante (Ret.), and is the product of an intensive, approximately two-year litigation effort and protracted and hard-fought arm's-length negotiations.[1]  Joint Decl., ¶¶4(ix), 6, 44-52; Infante Decl., ¶¶3-6.

---

[1]     Lead Counsel is simultaneously submitting the Declaration of Mark R. Rosen and Stephen R. Basser in Support of Final Approval of the Settlement, the Proposed Plan of Allocation of the Net Settlement Fund, and Lead Counsel's Application for Attorneys' Fees and Reimbursement of Expenses ("Joint Decl."); the Declaration of Edward A. Infante ("Infante Decl."), the Affidavit of Edward J. Sincavage, CPA of Heffler, Radetich & Saitta, LLP, the Claims Administrator (the "Sincavage Affidavit"), Lead Plaintiff's Memorandum of Law in Support of an Award of Attorneys' Fees and Reimbursement of Expenses, and the Declaration of Daniel E. Bacine in Support of Application for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Barrack, Rodos & Bacine.

The Joint Declaration details, among other matters,  (1) the history of the Action through the submission of the Settlement to the Court; (2) the nature of the claims asserted in the Action; (3) the investigation undertaken by Lead Counsel;

1

1    The Settlement was reached only after an extensive investigation conducted

2    by Lead Counsel, and while Defendants' second motion to dismiss was pending.

3    Indeed, by the time the Settlement was reached, Lead Counsel had: (1) filed both

4    its Consolidated Class Action Complaint ("Complaint") and First Amended

5    Consolidated Class Action Complaint ("Amended Complaint"), after conducting

6    an extensive factual investigation, including locating and interviewing numerous

7    former ValueClick employees and additional witnesses and completing an

8    extensive review and analysis of ValueClick's public filings and press releases,

9    related analyst reports and other documents relating to Defendants' public

10   statements; (2) prepared papers in opposition to Defendants' two motions to

11   dismiss; (3) successfully petitioned for, and reviewed, documents obtained from

12   the Federal Trade Commission ("FTC") relating to its investigation of ValueClick;

13   (4) fully briefed a motion for relief concerning communications with fact

14   witnesses; (5) retained and consulted with an econometric expert on materiality,

15   loss causation and damages; (6) obtained and analyzed a substantial volume of

16   internet material; (7) thoroughly reviewed and researched relevant trade,

17   advertising and marketing law and regulation; (8) engaged, under the supervision

18   of a well-respected mediator, in mediation sessions involving sophisticated and

19   contentious negotiations with Defendants that stretched over a period of several

20   months; and (9) reviewed documents produced by ValueClick and conducted

21   additional interviews of ValueClick employees and (Joint Decl. at ¶¶4(i)-(xii); 6,

22   44, 46, 52, 86).

23       Further, as discussed herein, Lead Plaintiffs have obtained an excellent

24   result despite facing significant risks in prosecuting this action.   The parties

25

26   _____

27   (4) the extensive complaints and motions to dismiss filed and briefed in the
     Action; (5) the protracted and arduous negotiations leading to the Settlement; (6)
28   the value of the Settlement to the Class, as compared to the risks and uncertainties
     of continued litigation; and (7) the terms of the Plan of Allocation for the net
     settlement proceeds and the factors upon which that plan is based.

vigorously disputed each of the significant elements of a securities fraud claim, including whether an actionable misstatement had been made, scienter, loss causation and damages. *See* Joint Decl., ¶¶10-17; Infante Decl., ¶¶4, 6. The Court had already dismissed the Complaint, and would have soon ruled on Defendants' motion to dismiss the Amended Complaint. *Id*. at ¶¶36, 39-42, 44. Even if the Court had denied Defendants' motion to dismiss, Defendants would have mounted a fervent challenge to Lead Plaintiffs' motion to certify the class. *Id*. at ¶18-20. Further, each of the elements of a securities fraud claim would have undoubtedly been the subject of complex expert testimony and further motion practice, which added to the risk and cost of the litigation. *Id*. at ¶¶20-21, 46.

The LIUNA Funds are sophisticated institutional investors of the type favored by Congress when passing the Private Securities Litigation Reform Act ("PSLRA"), have closely monitored this litigation from the outset, were involved in negotiating the Settlement, and recommend that it be approved. Joint Decl., ¶¶46, 49, 52, 80. Further, Lead Counsel, who has extensive experience in prosecuting securities class actions, has concluded that the Settlement is clearly in the best interests of the Class.

For all of reasons set forth below, this Court should grant final approval of the Settlement and approve Lead Plaintiff's Plan of Allocation.

## II.   DESCRIPTION OF THE LITIGATION

This case was brought on behalf of all persons, other than Defendants and their affiliates, who purchased ValueClick securities during the period from June 13, 2005 through and including July 27, 2007 (the "Class Period"), and who were damaged as a result of Defendants' violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5. Lead Plaintiffs allege that, during the Class Period, ValueClick's public SEC filings were false and misleading because they did not disclose that ValueClick's publicly-reported

3

financial results resulted from the Company's violations of the FTC Act, 15 U.S.C. § 45(a), the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM Act"), 15 U.S.C. § 7701 *et seq.*, and industry best practices concerning lead generation marketing tactics. *Id.* Further, Lead Plaintiffs allege that when ValueClick was forced to announce the FTC inquiry, Defendants falsely represented that ValueClick was in full compliance with all federal laws and regulations, as well as industry best practices. *Id.*

On May 18, 2007, ValueClick announced that the FTC was conducting an inquiry into whether the Company had violated the FTC Act or the CAN-SPAM Act. *Id.* at ¶¶14, 31.  Four days later, ValueClick disclosed that its lead generation segment accounted for more than 60 percent of the Company's Media segment revenue for the quarter ended March 31, 2007, and that the promotion-based sub-category of lead generation, which was the subject of the FTC inquiry, accounted for approximately 30 percent of its Media segment revenue for the same quarter. Finally, on July 30, 2007, ValueClick announced disappointing second quarter 2007 results, disclosing that its revenue and EBITDA were "negatively impacted by the Company's promotion-based business." *Id.* at ¶32.  Upon this news, ValueClick stock suffered an immediate 19.2 percent decline, falling $5 per share on unusually heavy volume.  *Id.*  Beginning on August 17, 2007, three class actions were filed in the Central District of California. *Id.* at ¶33.

On October 16, 2007, the LIUNA Funds moved for appointment as lead plaintiffs, and on November 20, 2007, this Court entered an order consolidating the cases, appointing the LIUNA Funds as Lead Plaintiffs, and appointing Barrack, Rodos & Bacine as Lead Counsel.  Joint Decl., ¶34.  After an extensive factual investigation, which included, among other things, a review and analysis of ValueClick's publicly-filed documents over a multi-year period, review and analysis of voluminous media files concerning ValueClick, including all press

4

releases and public statements issued by the Company over that period, review and analysis of analyst reports on ValueClick, the engagement of a private investigative firm and a review of witness interviews that firm conducted, as well as documents obtained from the FDA pursuant to FOIA requests, Lead Plaintiff filed its Complaint on January 23, 2008. *Id*. at ¶35.

On March 21, 2008, Defendants moved to dismiss the Complaint, arguing in part that (1) the Complaint failed to plead actionable misleading statements; (2) the alleged omissions were disclosed to the market; (3) any false or misleading statements were protected by the PSLRA's "safe harbor" provisions; and (4) the Complaint failed to adequately alleged scienter.  Joint Decl., ¶36.  On June 9, 2008, while the parties were briefing the motion to dismiss, Defendants filed a motion for sanctions. *Id*. at ¶36.  In connection with Defendants' motions, Lead Plaintiffs filed a motion to strike the declarations attached to Defendants' motion to dismiss and a motion to file Lead Counsel's investigative file under seal. Defendants' motion to dismiss was fully briefed by June 9, 2008, and Defendants' motion for sanctions was fully briefed by July 30, 2008. The Court entertained oral argument on the parties' motions on September 22, 2008, and by orders entered September 25, 2008, granted the motion to dismiss with leave to re-plead, and denied the remaining motions. *Id.* at ¶36.

Immediately thereafter, Lead Counsel renewed its factual investigation into Defendants' alleged misconduct.  In addition to seeking and obtaining, through its investigative firm, additional witness interviews, Lead Counsel reviewed and analyzed documents obtained from the FTC pursuant to a FOIA request and sought information from other witnesses who had been involved in prior litigation with ValueClick that was relevant to the Company's lead generation practices. Lead Plaintiffs also filed an *ex parte* application and formal motion for relief concerning communication with fact witnesses with this Court, seeking a ruling

5

voiding ValueClick's confidentiality agreements with former employees to the extent that they purported to prohibit former employees from providing truthful, non-privileged information relevant to this litigation to plaintiffs.  *Id*. at ¶37.

On November 24, 2008, after analyzing all of this information, Lead Plaintiffs filed a detailed Amended Complaint.  *Id*. at ¶38.  The Amended Complaint provided more detailed allegations, supported by documentation.  *Id*. at ¶38.

On January 23, 2009, Defendants moved to dismiss the Amended Complaint, advancing many of the same arguments they had advanced in their initial motion to dismiss.  Joint Decl., ¶39.  In the interim, mediation was suggested by defense counsel after Lead Plaintiffs filed their Amended Complaint. In subsequent conversations, the parties agreed to explore mediation and the possibility of a settlement.  Joint Decl., ¶40.  The parties settled on the selection of the Honorable Edward A. Infante (Ret.), and mediation sessions were held on December 2, 2008, and February 10, 2009.  *Id*. at ¶41.  In advance of these mediation sessions, plaintiffs prepared a detailed mediation statement and retained an expert to analyze the potential damage award.  *Id*. at ¶46-47.  After intensive negotiations, the parties reached an agreement-in-principle to settle the case for $10 million in cash at the February 10, 2009, mediation session, *Id*. at ¶42, and then proceeded to spend the next three months exchanging drafts of the proposed agreement and negotiating over the language of each provision in the drafts.  This Court preliminarily approved the terms of the Settlement on June 30, 2009.  *Id*. at ¶43.

As described in more detail in the Joint Declaration, the Settlement was informed by Lead Counsel's analysis and understanding of the risks inherent in continuing to litigate this matter, which were based upon their detailed and comprehensive investigation and diligent prosecution of the case, as well as its

6

substantial experience in litigating securities class actions.  In light of all of the relevant considerations, Lead Plaintiffs and Lead Counsel respectfully submit that this Court should grant final approval of the Settlement and Lead Plaintiffs' proposed Plan of Allocation.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The Settlement provides the Class with a recovery of $10 million.  The Plan of Allocation provides that the $10 million, less all taxes, approved costs, and Court awarded attorneys' fees and expenses (the "Net Settlement Fund") will be distributed to Class members who suffered a recognized loss and submit a timely, valid Proof of Claim ("Authorized Claimants").  Each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, as calculated by the Claims Administrator, based on the value of his/her recognized claim as compared to the total value of all claims submitted by Authorized Claimants.

Lead Plaintiff and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate in light of the circumstances, including the difficulty of proving Defendants' liability on claims asserted in this case.  Joint Decl., ¶¶58-63.

### A.    The Standards for Judicial Approval Of Class Action Settlements

There is a strong judicial policy in this Circuit favoring settlement of cases, particularly in complex class actions.  *See*, *e.g.*, *In re Xoma Corp. Sec. Litig.*, Master File No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502, *3-4 (N.D. Cal. July 14, 1992) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).  Settlement spares the litigants the uncertainty, delay and expense of a trial and appeals while simultaneously reducing the burden on judicial resources.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a class action shall not be dismissed or compromised without the approval of the court.

7

*See* Fed. R. Civ. P. 23(e); *see also In re Omnivision Techs.*, 559 F. Supp.2d 1036, 1040 (N.D. Cal. 2007); *In re Broadcom Corp. Sec. Litig.*, Case No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41983, *10-11 (C.D. Cal. Sept. 12, 2005); *Xoma*, 1992 U.S. Dist. LEXIS 10502 at *2-3.   The issue before the Court is whether the proposed "settlement, taken as a whole, is fundamentally fair, adequate and reasonable to all concerned." *Xoma*, 1992 U.S. Dist. LEXIS 10502 at *4 (citations omitted); *see also Broadcom*, 2005 U.S. Dist. LEXIS 41983 at *11.   In determining whether a given settlement is reasonable, the opinion of experienced counsel is entitled to considerable weight, and the court should avoid transforming the hearing on the settlement into a trial on the merits.   *See Broadcom*, 2005 U.S. Dist. LEXIS 41983 at *16-17; *Xoma*, 1992 U.S. Dist. LEXIS 10502 at *3, *9.

The Ninth Circuit has set forth the following non-exhaustive list of factors in deciding whether to approve a proposed settlement of a class action: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant[2]; and (8) the reaction of the class members to the proposed settlement.   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied* 459 U.S. 1217 (1983); *see also Omnivision*, 559 F. Supp.2d at 1040-41; *Broadcom*, 2005 U.S. Dist. LEXIS 41983 at *11-12. As set forth below, the Settlement represents an excellent result for Class, is presumptively fair, and clearly satisfies the applicable factors as set forth in *Officers for Justice*.

---

[2]   This factor is not relevant where, as here, there is no government participant in this class action.   *In re Heritage Bond Litig.*, MDL CASE NO.: 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, *37 (C.D. Cal. June 10, 2005).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     The Settlement Is Entitled To A Presumption Of Reasonableness**

Absent some indicia of collusion, a settlement reached through arm's-length negotiations by opposing counsel is entitled to a presumption of reasonableness. *Broadcom*, 2005 U.S. Dist. LEXIS 41983 at *16-17; *see also Xoma*, 1992 U.S. Dist. LEXIS 10502 at *9 ("When a settlement is achieved through arms-length negotiations between experienced counsel, the court should be hesitant to substitute its own judgment for that of counsel absent a showing of fraud, collusion or other forms of bad faith.").

This Action has now been pending for over two years.  Not only was the Settlement reached through arm's-length negotiations between experienced counsel, but (1) it was approved by sophisticated Lead Plaintiffs chosen pursuant to the "most adequate plaintiff" provisions of the PSLRA; (2) the negotiation process was facilitated by a highly experienced retired judge who served as the settlement mediator in this case (*see* Infante Decl., ¶¶1-5); and (3) it was reached after Lead Counsel had conducted an extensive investigation of the claims made against Defendants, Lead Counsel had obtained and analyzed documents concerning ValueClick's lead generation practices from the FTC, and the parties had engaged in two extensive mediation sessions that focused on the claims and the parties' contentions with respect to issues such as materiality, loss causation, and damages (Joint Decl., ¶¶44-52).

Under the PSLRA, a settlement reached under the supervision of an appropriately selected Lead Plaintiff is entitled to an even greater presumption of reasonableness.  As stated in the Senate Committee Report issued in support of the PSLRA, as cited in *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63-64 (D. Mass. 1996): "Institutions with large stakes in class actions have much the same interests as the plaintiff class generally; thus, courts could be more confident

9

settlements negotiated under the supervision of institutional plaintiffs were 'fair and reasonable.'"

Lead Counsel negotiated vigorously to benefit the Class with a firm understanding of the strengths and weaknesses of Lead Plaintiffs' claims and the significant risks of proceeding further.  *Id*.  Under these circumstances, the Settlement is entitled to a presumption of reasonableness.

## C.   An Analysis Of The Applicable *Officers for Justice* Factors Confirms That The Settlement Is Fair, Reasonable And Adequate

### 1.   The Strength Of Plaintiff's Case

As one court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-744 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).  Lead Counsel believes that the case against Defendants was strong but not without pitfalls.  The outcome of any litigation is never a certainty and there are significant risks in any lawsuit, especially where fraud is alleged.  In *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 451 (W.D. Pa. 1987), the court stated: "[W]e recognize plaintiffs' risks of establishing liability are significant where fraud is alleged.  Elements such as scienter, materiality of misrepresentation and reliance by the class members often present significant barriers to recovery in securities fraud litigation."  In this case, Defendants vigorously contested issues of liability, loss causation and damages.  Joint Decl., ¶¶7-8, 11-17.

Among other things, Lead Plaintiffs were tasked with proving that (1) Defendants made material misstatements or omissions; (2) Defendants acted with scienter; and (3) that the purchasers of ValueClick securities relied on these misrepresentations or omissions.  Defendants aggressively asserted that any alleged misstatements or omissions were not actionable, that they did not act with

10

scienter, and that any drop in ValueClick's stock price was due to factors other than the alleged fraud.  Joint Decl., ¶¶11-17.

Specifically, with regard to the misstatements or omissions, Defendants argued that (1) Defendants did not make any false or misleading statements; (2) Defendants were under no duty to disclose any potential wrongdoing; (3) Defendants' alleged illegal practices were not material; and (4) Defendants' statements were accompanied by precautionary language and were therefore not actionable under the PSLRA's safe harbor provision.  Joint Decl., ¶11.

With regard to loss causation, Defendants argued that Lead Plaintiffs could not link any of the alleged wrongdoing to the decrease in ValueClick's stock price.  Further, and related to the first argument, Defendants contended that Lead Plaintiffs could not pinpoint any corrective disclosure that revealed the misconduct and caused their loss, as ValueClick's stock price did not decrease with the announcement of the FTC's investigation.  *Id.* at ¶13-17.

There was certainly no guarantee that Plaintiffs would survive Defendants' motion to dismiss.[3]  And had this Court denied Defendants' motion to dismiss the

---

[3]   Since the enactment of the PSLRA, many cases have been dismissed with prejudice at the pleading or summary judgment stage.  Indeed, federal reports are filled with opinions affirming dismissals of securities cases.  *See, e.g., Metzler v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261 (3rd Cir. 2005); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir.), *cert. denied*, 546 U.S. 935 (2005) ; *DeMarco v. DepoTech Corp.*, 33 Fed. Appx. 260 (9th Cir. 2002); *Colin v. Onyx Acceptance Corp.*, 31 Fed. Appx. 359 (9th Cir. 2002); *Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002); *Elliott Assocs., L.P. v. Hayes*, No. 01-7078, 2002 U.S. App. LEXIS 1474 (2d Cir. Jan. 18, 2002); *City of Philadelphia v. Fleming Co., Inc.*, 264 F.3d 1245 (10th Cir. 2001); *Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001); *Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001); *Berger v. Ludwick*, 15 Fed. Appx. 528 (9th Cir. 2001); *Theoharous v. Fong*, 256 F.3d 1219 (11th Cir. 2001); *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999);

11

Amended Complaint, Lead Plaintiffs would still have faced an uphill battle. Many of the same issues raised by Defendants in their motion to dismiss would have been raised again in a Motion for Summary Judgment or in opposition to Plaintiffs' motion for class certification.  And Defendants would have claimed there were no compensable damages.  *Id*. at ¶17-22.

Because of the complex nature of damages and loss causation in a Section 10(b) action, expert testimony is almost always necessary to establish the amount—and indeed the existence—of actual damages.   Joint Decl.,  ¶21. Defendants most certainly would have contended that any price declines attributable ValueClick's lead generation practices could not be recovered by the Class as damages.  *Id*.  The parties would then offer competing damages experts and, assuming they survived a *Daubert* challenge, there would have become a "battle of the experts," leaving the resolution of the issue uncertain.  *Id*. at ¶21.

The many appellate decisions affirming summary judgments and directed verdicts for defendants show that surviving a motion to dismiss is not a guarantee of recovery.  *See In re Digi Int'l, Sec. Litig*., 14 Fed. Appx. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000); *Phillips v. LCL Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998), *cert. denied*, 525 U.S. 1144 (1999); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997).  *See also, In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690 (D. Minn. 2009) (granting summary judgment); *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546 (S.D.N.Y. 2008) (granting summary judgment).

---

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999).

12

Further, there are several notable cases where plaintiff won a jury verdict, only to have the jury's determination overturned on appeal.  *See*, *e.g.*, *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned); *Robbins v. Kroger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of more than $81 million on basis of loss causation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, a jury verdict in the plaintiffs' favor and a First Circuit decision sustaining the plaintiffs' cause of action, the verdict was reversed in an *en banc* decision).

In short, while Lead Plaintiffs believe that the claims asserted have merit, if the litigation continued the Class would bear a substantial risk of establishing liability and damages in the face of numerous factual and legal issues that create considerable uncertainty.  This includes the possibility that Defendants would be successful in either their motion to dismiss, at class certification, at summary judgment or trial, thereby substantially reducing or eliminating the Class's recovery.  By contrast, the amount of the Settlement is considerable and eliminates all of these risks.[4]

### 2.    The Risk, Expense, Complexity And Likely Duration Of Further Litigation

Securities fraud class actions like this one involve complex issues whose resolution would likely require extensive complex and costly expert economic analysis.  *See Xoma*, 1992 U.S. Dist. LEXIS 10502 at *7; *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  Lead Plaintiffs have the burden of proof with respect to all of the elements of their claims, including proving the

---

[4]    Further, because the Settlement "consists entirely of cash, without any equity or debt component, the benefit to the Class is not subject to the vagaries of the stock market or [ValueClick's] financial future," which is another consideration that weighs in favor of approving the Settlement.  *Broadcom*, 2005 U.S. Dist. LEXIS 41983 at *13.

13

false and misleading nature of Defendants' statements or omissions, their materiality, scienter, loss causation and damages.

If this Court had denied Defendants' motion to dismiss, the parties would have embarked on an exorbitantly expensive discovery program related to both class certification and the merits of the case.  Further, the issues raised in Lead Plaintiffs' motion for class certification most likely would have involved complicated theories, statistical models and competing experts.  Joint Decl. at ¶¶19-20.  Both Lead Plaintiffs' motion for class certification and the ultimate resolution of this litigation would have turned on close questions of law and complicated evidence concerning the nature of ValueClick's lead generation practices, as well as the statistical and economic modeling relating to loss causation and damage issues. *Id.* at ¶20.  In addition to the considerable cost for discovery, expert testimony alone would have been extraordinarily expensive in both time and expense.

Even if Lead Plaintiffs had chosen to litigate these issues through trial, it is impossible to predict how a jury would react to the evidence presented.  *See*, *e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("[I]t is virtually impossible to predict with any certainty which [experts'] testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

A favorable trial outcome in a securities class action cannot be assumed, as was recently illustrated in *In re JDS Uniphase Sec. Litig.*, Case No. 4:02-cv-01486-CW (N.D. Cal.), in which the jury found in defendants' favor after an extensive trial lasting almost three months.  Even assuming a favorable trial outcome, the delay of post-trial motions and the appellate process would likely have denied the Class any recovery for years. Notwithstanding the risks as set

14

forth above, many securities cases have been lost at trial, on post-trial motions, or on appeal. *See In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (trial court grant of Rule 50(b) motion as to loss causation, vacating unanimous jury verdict for plaintiffs following a two month trial, and granting judgment for defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988), *cert. denied*, 490 U.S. 1065 (1989) (reversing plaintiffs' jury verdict for securities fraud); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (reversing $145 million judgment after years of appeals and on a theory that defendant had not raised, or argued); *Levinson*, 868 F.2d at 564-65; *Robbins*, 116 F.3d at 1441; *Backman*, 910 F.2d at 10. Thus, "[i]t is safe to say, in a case of this complexity, the end of that road might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

Lead Counsel believes that the Settlement represents not only a "reasonable" result, but an outstanding one when viewed in light of all of the risks and costs of litigation that will be eliminated. The Settlement secures a substantial recovery for the Class undiminished by further expenses and without the delays, costs, risks and uncertainties of continued litigation.

### 3.   The Risk of Maintaining Class Action Status Throughout The Trial

Lead Plaintiffs' path to class certification would have been fraught with substantial risk and expense. Even if this Court had certified a Class here, there is always a risk that a class will be modified or decertified prior to a decision on the merits. As the Fifth Circuit so vividly ruled in the appeal of the class certification

15

order in the *Enron* case, no decision certifying a class—even in a federal securities law case—is immune from a possible reversal of such a class order on appeal. *Regents of the Univ. of Cal. v. Credit Suisse First Boston USA, Inc.*, 482 F.3d 372 (5th Cir. 2007), *cert. denied*, No. 06-1341, 2008 U.S. LEXIS 1120 (Jan. 22, 2008).

### 4.   The Amount Offered In Settlement

The Settlement is considerable and represents an outstanding recovery for the Class, particularly when compared to the attended risks and expenses of litigation.   As the court noted in *Xoma*, "[t]he amount of the settlement offer should be reasonable in light of the strength of plaintiffs' case and the risks, costs, etc. of proceeding through trial."  1992 U.S. Dist. LEXIS 10502 at *8.

As noted above, the risks and costs of proceeding through trial in this case were extraordinary.  Lead Plaintiffs have managed to avoid these risks and costs, and have still secured a Settlement that represents a substantial portion of ValueClick's directors and officers ("D&O") insurance.   Specifically, ValueClick's D&O insurance totals $30 million, with a $10 million primary layer. A portion of that $30 million had undoubtedly been exhausted in defense costs related to the litigation of the Action thus far.  The Settlement therefore represents a recovery of 100% of ValueClick's primary layer of D&O insurance, and at least 33% of ValueClick's total remaining primary and excess D&O insurance.

Further, the Settlement is more than three times the record $2.9 million consent judgment the FTC recovered in its case, which weighs heavily in favor of approving the Settlement.  *See McPhail v. First Command Fin. Planning, Inc.*, Case No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, *14 (S.D. Cal. Mar. 30, 2009) (finding settlement amount reasonable, in part due to comparison of settlement amount with "defendants' settlement with the SEC in a different, but related, case").

16

### 5.    The Extent Of Discovery Completed, And The Stage Of Proceedings

While Lead Plaintiffs had not taken discovery in this Action, it is important to note that the Ninth Circuit has stated that formal discovery is not a "necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision on settlement. *Linney v. Cellular Alaska Part.*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Further, while Lead Plaintiffs had not taken formal discovery, Lead Counsel had conducted an intensely thorough investigation of the claims against the Defendants, and had (1) retained an investigative firm that obtained witness interviews that were reviewed and analyzed by Lead Counsel; (2) obtained documents concerning ValueClick's lead generation practices, including internal ValueClick documents, from the FTC pursuant to a FOIA request; and (3) contacted former persons who were involved in other litigation against ValueClick relevant to the Company's lead generation practices and obtained documents that were relevant to Lead Plaintiffs' claims here.  Joint Decl., ¶¶4, 28-29.  The detail of the Amended Complaint, and the extensive list of exhibits attached thereto, demonstrates that Lead Plaintiffs and Lead Counsel had more than ample information with which to fairly evaluate the strength of Lead Plaintiffs' claims when the Settlement was reached.  *Id*.

The parties also engaged in two days of mediation sessions before an experienced mediator, as well as confirmatory discovery of witnesses and documents, which together gave Lead Counsel an even clearer view of the strengths and weaknesses of Lead Plaintiffs' claims, as well as the difficulties that the Class would face in obtaining a favorable jury verdict.  *Id*. at ¶¶44-52; Infante Decl., ¶¶2-6.

### 6.    The Experience And Views Of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely associated with the facts of the underlying litigation."  *Broadcom*, 2005

17

U.S. Dist. LEXIS 41983 at *16-17 (citations omitted).  The Settlement here was achieved by Lead Plaintiffs and Lead Counsel, one of the most experienced and skilled firms in the securities litigation field that has achieved some of the largest recoveries in cases of this type.  Joint Decl. ¶¶66-68.

Barrack, Rodos & Bacine has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  *Id.* at ¶66-68.  In appointing Barrack, Rodos & Bacine as Lead Counsel in this case, this Court recognized the extensive experience that the firm has in prosecuting securities class actions similar to this one, stating that:

> [Barrack, Rodos & Bacine] has extensive experience serving as lead counsel in dozens of securities class actions, including two of the largest securities class action recoveries in history, *In re WorldCom, Inc. Sec. Litig.* and *In re Cendant Corp. Sec. Litig.*

Order Re Motions To Consolidate, Appoint Lead Plaintiff, And Appoint Class Counsel, entered November 20, 2008 (D.E. #17).

### 7.    The Reaction Of Class Members To The Proposed Settlement

Pursuant to the Court's Preliminary Order for Notice and Hearing entered June 30, 2009, over 105,000 copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") were mailed to potential Class members or their nominees, and a Summary Notice was issued over *Business Wire*, *PR Newswire*, and *Market Wire*. Sincavage Affidavit, ¶¶5-12.  The Notice apprised Class members of the terms of the Settlement, and of their right to object to the Settlement, the Plan of Allocation or Lead Counsel's application for attorneys' fees and reimbursement of expenses. Joint Decl., ¶53-57, 81.

While the time period for Class Members to object to or opt out of the Settlement does not expire until October 9, 2009, as of this time, no shareholders

18

have objected and only two have opted out of the Settlement.   Sincavage Affidavit, ¶14.  This represents a tiny fraction of the potential Class Members to whom the Notice has been disseminated.

It is well settled that the complete absence or a small number of objections to a proposed class settlement is strong evidence that the settlement is fair and reasonable.  *See*, *e.g.*, *Omnivision*, 559 F. Supp.2d at 1043; *Broadcom*, 2005 U.S. Dist. LEXIS 41983 at *18; *see also Xoma*, 1992 U.S. Dist. LEXIS 10502 at *10 (lack of objections carries "substantial weight in favor of approving the settlement").

## IV.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Approval of a plan of allocation in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution must be fair, adequate and reasonable.  *See Omnivision*, 559 F. Supp.2d at 1045 (citation omitted).  "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."  *Id*.  Further, in determining the fairness, reasonableness and adequacy of a proposed plan of allocation, courts give great weight to the opinion of qualified counsel.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126, 133 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *In re NASDAQ Market-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS, 2000 U.S. Dist. LEXIS 304, *5 (S.D.N.Y. Jan. 18, 2000) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel").

The Plan of Allocation here—contained in the Notice mailed to all potential Class members—was created by Lead Counsel.  Joint Decl., ¶59.  To date, no objections to the Plan of Allocation have been filed or served on Lead Counsel.  *Id.* at ¶57.  The Plan of Allocation is fair, reasonable and adequate because it

19

estimates the losses of the Class attributable to Defendants' alleged misstatements. The Plan provides that:

    a. For ValueClick shares purchased before June 13, 2005, the Recognized Claim shall be zero;

    b. For ValueClick shares purchased and sold during the Class Period, the Recognized Claim shall be zero;

    c. For ValueClick shares purchased during the Class Period and sold during the period between July 28, 2007 and October 25, 2007, the Recognized Claim shall be the *lesser* of (1) $5.00 per share; (2) the purchase price (including commissions, etc.) minus the sales proceeds received (net of commissions, etc.); or (3) the purchase price (including commissions, etc.) minus the average closing price during the period the Authorized Claimant held the ValueClick shares between July 30, 2007 and the date of the sale of those shares. If this difference is a negative number (meaning that the Authorized Claimant made a profit on the sale), then the Recognized Claim for these shares shall be zero; and

    d. For ValueClick shares purchased during the Class Period and held until October 26, 2007 or later, the Recognized Claim shall be the *lesser* of (1) $5.00 per share; (2) the purchase price (including commissions, etc.) minus $22.08, which is the average closing price of ValueClick shares during the 90 days following the end of the Class Period. If this difference is a negative number (meaning that the Authorized Claimant made a profit on the sale), then the Recognized Claim for these shares shall be zero.

*Id.* at ¶¶58-63.   In processing claims and determining which shares purchased during the Class Period were sold and at what times, purchases and sales of ValueClick common stock will be matched on a first-in/first-out basis.

This Plan reflects a reasonable estimation of losses of Class members, which in turn depends on the date the stock was purchased and whether the stock was sold during the Class Period or held through the end of the Class Period.  The proposed Plan is plainly fair to the Class in its entirety, and should be approved.

## V.   THE CLASS SHOULD BE CERTIFIED UNDER RULES 23(A) AND (B)(3) FOR PURPOSES OF THE SETTLEMENT

As Lead Plaintiffs set forth in the motion for preliminary approval of the Settlement, the parties seek certification of a Settlement Class consisting of persons who purchased or acquired ValueClick common and preferred stock from June 13, 2005 through July 27, 2007, and held their stock at least through the end of the Class Period.

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995); *see also Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982) (calling temporary settlement classes "quite useful" in resolving major class action disputes).

Lead Plaintiffs' Memorandum of Points and Authorities in Support of Preliminary Approval of the Settlement, filed with this Court on June 12, 2009, discussed the relevant criteria for class certification in the settlement context in urging this Court to certify a settlement class in this Action.  In the interest of efficiency, Lead Plaintiffs incorporate that discussion here, and remain firm in their belief that the class certification criteria are easily met here because of the Class's unified common interest in a reasonable recovery. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

As such, for purposes of this Settlement, this Court should certify a Class of persons and entities who purchased or acquired the common stock of ValueClick, Inc. from June 13, 2005 through and including July 27, 2007, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the Settlement and the Plan of Allocation as fair, reasonable and adequate and in the best interests of the Class.

DATED: October 5, 2009                         Respectively submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD

_____/s/ Stephen R. Basser_____
STEPHEN R. BASSER

One America Plaza
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

BARRACK, RODOS & BACINE
LEONARD BARRACK
DANIEL E. BACINE
MARK R. ROSEN
CHAD C. CARDER

_____/s/ Mark R. Rosen_____
MARK R. ROSEN

3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

Lead Counsel for Lead Plaintiffs and
the Proposed Settlement Class