STEPHEN R. BASSER (121590)
BARRACK, RODOS & BACINE
One America Plaza
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

LEONARD BARRACK
DANIEL E. BACINE
MARK R. ROSEN (139506)
CHAD C. CARDER
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

Lead Counsel For Lead Plaintiffs and the
Proposed Settlement Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CARL WALDREP, On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>VALUECLICK, INC., JAMES R. ZARLEY, and SAMUEL J. PAISLEY,<br><br>        Defendants. | CASE NO. CV 07-5411 DDP (AJWx)<br><br>The Hon. Dean D. Pregerson<br><br><u>CLASS ACTION</u><br><br>NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:   November 9, 2009<br>TIME:    10:00 a.m.<br>CRTM:   3<br>JUDGE:  Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT.................................................................1

II.    HISTORY OF THE LITIGATION..........................................................3

III.   AWARD OF ATTORNEYS' FEES..........................................................4

       A.    A Reasonable Percentage of the Settlement Fund Recovered Is the
             Appropriate Approach to Awarding Attorneys' Fees in Common
             Fund Cases .............................................................................4

       B.    Awarding a Percentage Fee of 25% and More of the Settlement
             Fund Created Is Common Practice in This Circuit.............................7

       C.    Lead Plaintiffs' Support for the Requested Fee is Entitled to
             Considerable Weight....................................................................8

       D.    Consideration of Relevant Factors Justify an Award of a 25% Fee
             in This Case...............................................................................9

       E.    Public Policy Considerations Mandate the Award of Adequate
             Fees in Representative Actions So That Competent and
             Experienced Lawyers Will Undertake Such Representations...........19

V.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
       NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
       OBTAINED FOR THE CLASS ..................................................................20

VII.   CONCLUSION ..............................................................................24

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995)..................................................................21

*Affiliated Ute Citizens v. United States*,
  406 U.S. 128 (1972) ...........................................................................19

*In re WorldCom, Inc. Sec. Litig.*,
  2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ...................................18

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ...........................................................................19

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) .............................................................................4

*Blum v. Stenson*,
  465 U.S. 886, 904 (1984) ...................................................................17

*Bratcher v. Bray-Doyle Indep. Sch. Dist, No. 42 of Stephens County, Okl.*
  8 F.3d 722 (10th Cir. 1993)................................................................21

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988)..............................................................5

*Camden I Condo. Ass'n Inc, v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991)..............................................................5

*Central R.R. & Banking Co. of Ga. v. Pettus*,
  113 U.S. 116 (1885) .............................................................................4

*Detroit v. Grimmell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...............................................................10

*Dolgow v. Anderson*,
  43 F.R.D. 472 (E.D. N.Y. 1968) ..........................................................4

*Economic Analysis of Law* §21.9
  (3d ed. 1986) ......................................................................................15

*Eltman v. Grandma Lee's, Inc.*,
  [1986-1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,798
  (E.D. N.Y. May 28, 1986).................................................................20

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560 (7th Cir. 1994)..................................................................6

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  741 F. Supp. 84 (S.D.N.Y. 1990).......................................................22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Glass v. UBS Fin. Servs., Inc.*,
No. 07-15278, 2009 WL 306120 ........................................................................9

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994)........................................................5, 6, 22

*Gottlieb v. Wiles*,
150 F.R.D. 174 (D. Colo. 1993)……………………………………………22

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991)........................................................................5

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)........................................................................21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................10

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ........................................................................19

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ........................................ *passim*

*In re "Agent Orange" Prod. Liab. Litig.*,
611 F. Supp. 1296 (E.D.N.Y. 1985) ..................................................7

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................6, 7

*In re Apollo Group, Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
(D. Ariz. Aug. 4, 2008) ..................................................................13

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992)........................................................5, 22

*In re CV Therapeutics, Inc. Sec. Litig.*,
2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ..................................16

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ....................................14

*In re First Fidelity Bancorp. Sec. Litig.*,
750 F. Supp. 160 (D.N.J. 1990) ........................................................5

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)..............................................................6

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................11, 17

*In re Immunex Sec. Litig.*,
864 F. Supp. 142 (W.D. Wash. 1994)................................................17

*In re JDS Uniphase Securities Litigation,*
  No. 02-1486 CW (N.D. Cal. 2007) ...................................................13

*In re King Res. Co. Sec. Litig.,*
  420 F. Supp. 610 (D. Colo. 1976) ...............................................10, 11

*In re Lucent Tech., Inc., Sec. Litig.,*
  327 F. Supp. 2d 426 (D.N.J. 2004) .................................................18

*In re M.D.C. Holdings Sec. Litig.,*
  1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...................................17

*In re McDonnell Douglas Equip. Leasing Sec. Litig.,*
  842 F. Supp 733 (S.D.N.Y. 1994).................................................22

*In re Media Vision Tech. Sec. Litig.,*
  913 F. Supp. 1362 (N.D. Cal. 1996)..............................................22

*In re Omnivision Tech., Inc.,*
  559 F. Supp. 2d .............................................................9, 16, 18

*In re Pub. Serv. Co. of New Mexico,*
  1992 WL 278452 (S.D. Cal. July 28, 1992) ...................................17

*In re RJR Nabisco, Inc. Sec. Litig.,*
  1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ..................................16

*In re Sumitomo Copper Litig.,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..............................................6

*In re Synthroid Mktg. Litig.,*
  264 F.3d 7128 (7th Cir. 2001)...................................................16, 17

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza*
  *Hotel Fire Litig.,*
  56 F.3d 295 (1st Cir. 1995) ...........................................................6

*In re U.S. Bioscience Sec. Litig.,*
  155 F.R.D. 116 (E.D. Pa. 1994).....................................................17

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,*
  724 F. Supp. 160 (S.D. N.Y. 1989).................................................7

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
  19 F.3d 1291 (9th Cir. 1995)................................................ *passim*

*J.I. Case Co. v. Borak,*
  377 U.S. 426 (1964) .....................................................................5

*Johnson v. Ga. Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974)........................................................15

*Kirchoff v. Flynn,*
  786 F.2d 320 (7th Cir. 1986)......................................................6, 17

iv

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................................16, 18

*Kurzweil v. Philip Morris Cos., Inc.*,
  1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) .................................................18

*Miltland Raleigh-Durham v. Myers*.
  840 F. Supp 235 (S.D.N.Y. 1993)...................................................................21

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989)……………………………………………..*passim*

*Rabin v. Concord Assets Group, Inc.*, 1991 WL 275757
  (S.D.N.Y. Dec. 19, 1991).................................................................................18

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993)..................................................................................6

*Red Door Salons*,
  2009 WL 248367...............................................................................................19

*Superintendent of Ins. v. Bankers Life & Casualty Co.*,
  404 U.S. 6 (1971) .............................................................................................19

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ..........................................................................5, 6

*Thornberry v. Delta Air Lines, Inc.*,
  676 F.2d 1240 (9th Cir. 1982)..........................................................................23

*Torrisi v. Tuscan Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993)...........................................................................5, 6

*Trustees v. Greenough*,
  105 U.S. 527 (1882) ...........................................................................................4

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ..................................................................18

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977)..............................................................................4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)............................................................................3

## STATUTE, RULES & REGULATIONS

15 U.S.C. §78u-4(a)(6) ..........................................................................................7

SEC Rule 10b-5 ....................................................................................................10

15 U.S.C. §45(a) .........................................................................................................2

15 U.S.C. §7701 .........................................................................................................2

Private Securities Litigation Reform Act of 1995 ....................................................2

**<u>OTHER AUTHORITIES</u>**

Louis Loss, *Securities Regulation*, 1819 (2d ed. 1961)…………………………..20

Ronald J. Miller, *et al., Recent Trends in Shareholder
Class Action Litigation:  Beyond the Mega-Settlements, is
Stabilization Ahead?*, 4 (NERA Apr. 2006)………………………………………...11

vi

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 9, 2009, at 10:00 a.m., or as soon thereafter as counsel  may be heard, in the Courtroom of the Honorable Dean Pregerson, United States District Court, 312 North Spring Street, Los Angeles, California, Lead Counsel, Barrack Rodos & Bacine ("Barrack Rodos" or "Lead Counsel") will and hereby does move for entry of an order awarding attorneys' fees and expenses relating to its prosecution of the claims by Lead Plaintiffs Laborers' International Union of North America National (Industrial) Pension Fund and LIUNA Staff & Affiliates Pension Fund (collectively "Lead Plaintiffs"), acting on behalf of themselves and all Class Members in the above-titled action ("the Action"), against Defendants ValueClick, Inc., ("ValueClick" or the "Company"), and James R. Zarley and Samuel J. Paisley (the "Individual Defendants") (collectively with ValueClick, the "Defendants").[1]

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs and Lead Counsel have succeeded in reaching a proposed Settlement with Defendants for *$10 million in cash, plus accrued interest* for the benefit of the Class.[2]

As detailed in the accompanying Joint Declaration, the Settlement was achieved only after hard fought litigation for approximately one and one-half years and after two mediation sessions conducted by a highly respected former jurist and experienced mediator.  *See* Declaration of Edward A. Infante.  Lead

---

[1]    This Motion is based on the accompanying Declaration of Daniel E. Bacine, Declaration of Edward A. Infante, Affidavit of Edward Sincavage, and Joint Declaration of Mark R. Rosen and Stephen R. Basser in Support of Final Approval of Settlement and Plan of Allocation, and Approval of Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl."); the Stipulation of Settlement dated June 11, 2009 (the "Stipulation"); all other pleadings filed in this case; and such additional evidence or argument as may be presented at the hearing.  Unless otherwise defined herein, all capitalized terms herein shall have the meaning stated in the Stipulation.

[2]    The funds were deposited into a settlement account on or about July 22 and July 28, 2009 and are accruing interest.

1

Counsel's efforts included conducting an extensive pre-filing investigation; locating and interviewing numerous former ValueClick employees and additional witnesses; completing an extensive review and analysis of ValueClick's SEC filings and other documents related to the alleged false and misleading statements as alleged in the Complaint, including relevant SEC filings, analyst reports, and press releases; filing a detailed consolidated complaint and an amended consolidated complaint; opposing Defendants' successive motions to dismiss; retaining and consulting with an econometric expert on materiality, loss causation and damages; reviewing and analyzing a substantial volume of internet material secured through Plaintiffs' investigations; reviewing documentation secured via Lead Counsel's Freedom of Information Act ("FOIA") request to the Federal Trade Commission ("FTC"); thoroughly researching trade, advertising and marketing law and regulations, including the Federal Trade Commission Act, 15 U.S.C. §45(a), relevant FTC regulations and the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §7701 *et seq.*; preparing for and participating in in-person and telephonic mediation sessions before an experienced mediator; resolving the case amicably after intensive negotiations; developing a plan of allocation; preparation of a thorough Stipulation of Settlement and adequate Notice to shareholders; issuance of the publication notice; working with the claims administrator, and extensive preliminary and final settlement approval motion practice and oral argument.

Lead Counsel undertook the prosecution of this action on an entirely contingent basis. As compensation for the efforts expended to achieve the recovery for the Class, Lead Counsel is applying for fees constituting 25% of the Settlement Fund, or $2,500,000, and for reimbursement of $167,241.27 in out-of-pocket expenses. The percentage fee requested is supported by Lead Plaintiffs - sophisticated institutional investors with experience in prosecuting securities class actions under the Private Securities Litigation Reform Act of 1995 (the

2

"PSLRA"),   *See* Joint Decl. ¶80.   The percentage is fully in line with the benchmark established by the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)).  In addition, a lodestar cross-check confirms the reasonableness of the requested fee award.  Plaintiffs' Counsel devoted substantial resources to vigorously prosecuting this action for one and one-half years, plus an additional six more months finalizing the Stipulation of Settlement and thereafter working towards securing settlement approval and settlement class certification, devoting over 2,735 hours for a total lodestar of $1,372,958.75, and incurring expenses exceeding $167,000.00 as set forth in the Declaration of Daniel E. Bacine in Support of Motion for Approval of Attorney's Fees and Reimbursement of Expenses ("Bacine Decl.").  Thus, the amount of the attorneys' fees requested represents a very reasonable 1.8 multiplier, and further supports the reasonableness of the fee request.

As of October 5, 2009, Notice of Lead Counsel's proposed fee application was mailed to 105,629 potential Class Members or their nominees.  *See* Affidavit of Edward Sincavage ("Sincavage Aff.").  The deadline for Class Members to object to the Settlement and/or Lead Counsel's fee application, or to seek exclusion for the Class, expires on October 9, 2009.  As of the filing of this Motion, not a single Class Member has objected, and only two requests for exclusion have been received.  *Id.* ¶14.

## II.   HISTORY OF THE LITIGATION

Lead Counsel respectfully refers the Court to the accompanying Joint Declaration and companion motion for final settlement approval, for a description of the procedural history of the litigation, the claims asserted, the investigation and discovery undertaken, the negotiations and description of the Settlement, and the substantial risks and uncertainties of the litigation.

III.   **AWARD OF ATTORNEYS' FEES**

   A.   **A Reasonable Percentage of the Settlement Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases**

As a threshold matter, it has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).   This rule, known as the ***common fund doctrine***, is firmly rooted in American case law.   *See, e.g., Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R.R. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885).[3]

Courts have recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.   *See, e.g., Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968) (Weinstein, C.J.). Importantly, the Supreme Court has emphasized that private securities actions, such as the instant action, provide a "'most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case*

---

[3]   In *Paul, Johnson*, the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.   The amount of such a reward is that which is deemed 'reasonable' under the circumstances.

886 F.2d at 271 (citations omitted) (emphasis in original).

4

*Co. v. Borak*, 377 U.S. 426, 432 (1964)).

Hence, fee awards representing a percentage of the fund recovered have become an accepted, if not prevailing, method for awarding attorneys' fees in common fund cases in this Circuit and throughout the United States.

In *Paul, Johnson*; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage method in common fund cases.  And in the years since then, district courts in this Circuit have virtually uniformly shifted from the lodestar approach to the percentage method in awarding fees in common fund cases because it fosters judicial economy by eliminating the detailed and time-consuming lodestar analysis, as Chief Judge Patel correctly (and resoundingly) observed upon rejecting the lodestar analysis approach in *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989).[4]

Moreover, supporting authority for the percentage method in other circuits and by commentators is overwhelming.[5]  Compensating counsel in common fund

---

[4]      The question this court is compelled to ask is, 'Is this process necessary?'  Under a cost-benefit analysis, the answer would be a resounding, 'No!'   Not only do the *Lindy* and *Kerr-Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members.  They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition.  Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund.  Most important, however, is the effect the process has on the litigation and the timing of settlement.  Where attorneys must depend on a lodestar approach there is little incentive to arrive at an early settlement.

*Id*. at 1375-76.

[5]      Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) .  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Thirteen Appeals Arising Out of San Juan*

5

---

cases on a percentage basis is sound.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method.[6]  Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[7]  Third, as the court recognized in *Activision*, use of the percentages method decreases the burden imposed upon the court by the "lodestar" method, encourages early settlements, and assures that class members do not experience undue delay in receiving their share of the settlement.  *See Activision*, 723 F. Supp. at 1373.[8]

---

*Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (permitting use of percentage method, "[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Gottlieb*, 43 F.3d at 487   (authorizing percentage and holding that use of lodestar/multiplier method was abuse of discretion); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994) (percentage approach is appropriate in common fund case); *Torrisi*, 8 F.3d at 1376-77 (percentage approach appropriate); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Swedish Hosp. Corp.*, 1 F.3d at 1271  ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases").

[6]   *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999)).

[7]    The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains….At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

*Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986).

[8]    As former Chief Judge Brieant, of the Southern District of New York, commenting upon the *Paul, Johnson* decision has succinctly stated:

Such an award is consistent with the new learning (old wine in a new bottle) announced by the Ninth Circuit in *Paul, Johnson*, *supra*, which new learning we believe will proceed from West to East and take us back to straight contingent fee awards bereft of largely judgmental and time-wasting computations…no matter how conscientious, often seem to take on the character of so much

6

From a public policy perspective, the percentage-of-the-fund approach is the most efficient means of rewarding the work of class action attorneys.  It does not waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.  *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1306 (E.D.N.Y. 1985) (criticizing lodestar approach as one that "tends to encourage excess discovery, delays and late settlements, while it discourages rapid, efficient and cheaper resolution of litigation"), *aff'd in part*, *rev 'd in part*, 818 F.2d 226 (2d Cir. 1987).  Importantly, the percentage method also appears to be favored by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") 15 U.S.C. §78u-4(a)(6).

**B.**     **Awarding a Percentage Fee of 25% and More of the Settlement Fund Created Is Common Practice in This Circuit**

In *Paul, Johnson*, the Ninth Circuit established ***25%*** of the common fund as the ***"benchmark" award*** for attorneys' fees.   886 F.2d at 272 (emphasis in original). The guiding principle is that the fee award be "'reasonable under the circumstances.'"  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*") (citation omitted).

Notwithstanding the 25% "benchmark," in the years since Chief Judge Patel's *Activision* decision, a large number of courts within this Circuit and elsewhere have awarded attorneys' fees of 30% of the value of the recovery, implicitly (if not explicitly) following that court's observation that, in reality, fee awards "almost always hover[] around 30% of the fund created by the settlement." *Activision*, 723 F. Supp. at 1375.   In *Activision*, Chief Judge Patel critically analyzed securities class action "lodestar/multiplier" fee awards, concluding "that

---

Mumbo Jumbo.  They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989).

7

in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, ***the rate should be set at 30%***." *Id.* at 1378 (emphasis added).[9]

## C.     Lead Plaintiffs' Support for the Requested Fee is Entitled to Considerable Weight

Since passage of the PSLRA, courts have found agreements between fully informed lead plaintiffs and their counsel regarding an appropriate fee award to be presumptively reasonable.  *In re Cendant Corp. Litig.* 264 F. 3d 201, 282 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002); *accord In re Lucent Tech, Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 433-34 (D.N.J. 2004).

In *Cendant*, the court explicitly recognized that, in enacting the PSLRA, Congress expressed its strong belief that an institutional lead plaintiff would be in a better position than the court to protect the interests of the class by monitoring lead counsel throughout the litigation and by determining a reasonable fee award for counsel's representation.  *Cendant,* 264 F.3d. at 276 (holding that Congress believed that "institutional investors would likely do a better job than courts at selecting, retaining, and monitoring counsel than courts have traditionally done"). Indeed, the court in *Cendant* went so far as to hold that consistent with the PSLRA, and absent unusual and unforeseen changes, ***courts should honor the***

---

[9]       In *Activision*, the court explained its rationale as follows:

The Ninth Circuit's opinion does not appear to foreclose, upon appropriate findings, the setting of a different benchmark, since it left 'to the district court the task of determining what this reasonable percentage should be.'  [*Paul, Johnson*, 886 F.2d at 271]  The 25% was given for guidance and the court indicated it would approve use of that figure.  As documented by the lengthy list of cases below, this court finds that in most recent cases the benchmark is closer to 30%.  Therefore, the court finds that a figure of approximately 30% is substantially justified.  This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.

*Id.* at 1377.

8

*presumption of the reasonableness of a fee approved by the lead plaintiff*.  *Id.* at 282.

The Lead Plaintiffs give their support for a 25% fee with the knowledge of the work performed and the result achieved as a product of counsel's zealous advocacy for the entire class.  The fact that Lead Plaintiffs support the fee request should be given considerable weight and honored here.  *See Cendant*, 264 F.3d at 282; *accord Lucent*, 327 F. Supp. 2d at 433-34.

**D.    Consideration of Relevant Factors Justify an Award of a 25% Fee in This Case**

Lead Counsel respectfully submits that an attorneys' fee award of 25% of the fund recovered is clearly reasonable and appropriate under the circumstances of this case.  This is confirmed by reviewing the relevant factors.  Courts in this circuit consider the following factors:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class to the proposed fee and expense request; and (7) the amount of a lodestar cross-check.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, No. 07-15278, 2009 WL 306120, at *2; *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d at 1046-48.

1.    ***The result achieved.***  A settlement of ***$10 million*** (plus interest) has been obtained solely through the efforts of Lead Counsel, without the prosecutorial assistance of the United States Attorney, the Securities and Exchange Commission or the Federal Trade Commission or the burden and risk of a lengthy trial or any post-trial appeal.  This favorable Settlement was achieved as a result of diligent and hard-fought prosecutorial and investigative efforts as detailed in the Joint Declaration.  The $10 million represents a substantial amount of directors' and officers' liability insurance proceeds: 100% of their ***primary***

9

*coverage* of $10 million and 33% of total primary and excess coverage of $30 million.  As a result of this settlement, Class members will receive compensation for their losses in ValueClick securities and avoid the very substantial risk of no recovery in the absence of a settlement.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

     2.    ***The risks both as to liability and damages***.  Numerous cases have recognized that risk is an important factor in determining the fee award.  *See, e.g., WPPSS*, 19 F.3d at 1299-1301; *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("the risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").  Uncertainty that an ultimate recovery would be obtained is highly relevant in determining **risk**.  *WPPSS*, 19 F.3d at 1300; *Detroit*, 495 F.2d at 470; *Lindy*, 540 F.2d at 117.  As the court aptly observed in *King*:

> The litigation also involved unique and substantial issues of law in the technical area of SEC Rule 10b-5, …difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages.

> *     *     *

> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation.  The prospects of success

10

were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

420 F. Supp. at 632, 636-37.

While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased exponentially.  Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). According to an April 2006 NERA study, dismissal rates have doubled since the PSLRA, accounting for 40.3% of dispositions.  *See* Ronald I. Miller, *et al., Recent Trends in Shareholder Class Action Litigation:  Beyond the Mega-Settlements, is Stabilization Ahead?*, 4 (NERA Apr. 2006).

As discussed in the Joint Decl. at ¶¶7, 10-22, 50-51, 70-80, substantial risks and uncertainties in this type of litigation, and this litigation in particular, made it far from certain that an ultimate recovery would be obtained.  Specifically, here, the risks assumed by Lead Counsel were substantial.  There is no question that this case raised a panoply of difficult issues because it was filed under the PSLRA.  Lead Plaintiff alleged that throughout the Class Period Defendants disseminated materially false and misleading statements to the public relating to ValueClick's business practices and compliance with the Federal Trade Commission Act and the CAN-SPAM Act, the nature and quality of how it achieved revenue and any FTC investigation into its business and marketing practices.

The parties strongly disagreed about liability and damages.  As more fully discussed in the Joint Declaration at ¶¶7, 11-17, 51, the Defendants vigorously denied Lead Plaintiffs' allegations of liability and damages, while underscoring their position that any alleged false statements in the Amended Complaint were

11

1    principally "forward-looking" projections of future events which Defendants did
2    not actually know or believe were false or could not be achieved when their
3    statements were made, thus hampering Plaintiffs' ability to meet their required
4    burden of proving the requisite scienter under the PSLRA respecting forward-
5    looking statements: "actual knowledge."  Defendants challenged many of the
6    statements as immaterial to investors.  Serious challenges as to liability were
7    posed by Defendants' contentions that they timely disclosed adverse events,
8    including an FTC investigation on May 18, 2007, before the end of the Class
9    Period of July 27, 2007, and that their marketing practices were pursued in a good
10   faith belief that they were complying with the law, the CAN-SPAM Act and
11   relevant FTC rules and regulations.  Defendants vigorously challenged the
12   existence of "loss causation," a necessary element of Plaintiffs' claim for damages,
13   adding further that any damages allegedly caused by their alleged false statements
14   were required to be reduced by application of the PSLRA's 90 day "look back"
15   provision.  *See* Joint Declaration at ¶¶17, 51.

16       Moreover, were this settlement not achieved, Lead Plaintiffs faced
17   additional costly and risky litigation against the Defendants, with ultimate success
18   far from certain.  It is possible that the case would not have reached a jury and, if
19   it did, a jury could have found no liability or no damages.  Indeed, absent hitting a
20   virtual grand slam in which the jury would find for Plaintiffs as to every single
21   issue and as to every single alleged false statement — including embracing a very
22   aggressive damages assessment admitting of no compromise and assessing
23   artificial inflation arising from every single alleged false statement that was
24   dissipated by corrective fraud related disclosure, and the materiality of every such
25   statement or omission throughout all of the Class Period — there was a serious

26
27
28

12

risk that even if a verdict was achieved, it could eventually result in achieving much less for the Class or even nothing at all.[10]

While Lead Plaintiffs believe that their case is meritorious, if the court or trier of fact agreed with Defendants, any recovery would have been substantially reduced or eliminated altogether.   In the face of these risks, Lead Counsel achieved a $10 million recovery for the class. Under these circumstances, the requested fee is fully justified.

3.   ***The skill required and the quality of the work***.   The third factor to consider in determining what fee to award is the skill required and quality of work performed. *Gustafson v. Valley Ins. Co.*, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004).   "The 'prosecution and management of a complex national class action requires unique legal skills and abilities. ' This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss. " *Omnivision*, 559 F. Supp. 2d at 1047; *see also Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award. ").

Here, the attorneys at Barrack Rodos are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record in such cases.[11]   From the outset, Lead Counsel engaged in

---

[10]   The risk of an unsuccessful jury verdict after trial in securities class actions was recently illustrated in *In re JDS Uniphase Securities Litigation*, No. 02-1486 CW (N.D. Cal. 2007), in which the jury found in defendants favor after an extensive trial lasting almost three months.   Even a successful jury verdict does not guarantee recovery, as more recently exemplified by *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) in which the trial court granted Defendants' Rule 50(b) post-trial motion on the discrete issue of "loss causation," six months after a jury unanimously found in favor of plaintiffs on every issue of their securities fraud claims that were tried over approximately two months.

[11]   *See* Firm Resume of Barrack Rodos & Bacine, attached as Ex. 1 to the Bacine Decl.

13

a concerted effort to obtain the maximum recovery for the Class.  Lead Counsel demonstrated that they would work to try to develop sufficient evidence to support a convincing case.  Through Lead Counsel's persistent and skillful work, Lead Plaintiffs were able to plead detailed allegations based on a thorough investigation, and advanced a thorough Amended Complaint that strongly presented their claims.

As detailed in the Joint Declaration, Lead Counsel secured documentation from the FTC pursuant to FOIA and obtained documents and one-on-one interviews of certain knowledgeable witnesses from Defendants in aid of evaluating Plaintiffs claims and to ultimately confirm the appropriateness of the settlement.  Lead Counsel's skill and experience was also key in communicating with an econometric expert necessarily retained in this complicated securities class action regarding loss causation and damages.  Joint Decl. ¶¶4(vii-viii), 21, 46.

The fact that Lead Counsel has demonstrated a willingness and ability to prosecute complex cases such as this throughout trial and appeals was undoubtedly a factor that encouraged Defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Class.  The parties engaged in mediation sessions commencing December 2008 and into early 2009 in which the merits and risks presented were realistically evaluated with the aid of a respected, highly experienced jurist and JAMS mediator, the Honorable Edward A. Infante, a retired Chief United States Magistrate Judge who supports this settlement.  *See* Declaration of Edward A. Infante.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Lead Counsel.  *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Here, Defendants were represented by Gibson, Dunn & Crutcher, a firm with substantial experience in

14

this type of litigation.  Thus, the fact that Lead Counsel achieved this settlement for the Class in the face of formidable legal opposition further evidences the quality of their work and the skill level it brought to bear in achieving a successful resolution for the class.

   4.   ***The novelty and difficulty of the question presented***.  Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *See, e.g. Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

   Because of applicability of the PSLRA, evolving and unresolved legal issues were presented.  Indeed, the issue of "loss causation" was vigorously challenged and required extensive expert assistance in aid of addressing that evolving defense advanced by highly experienced and creative defense counsel.  Had this Settlement not been achieved, difficult issues would be raised in connection with Lead Plaintiffs' efforts to prove Defendants liable in a legal climate shaped by the PSLRA.  Complex factual and legal questions were and would have continued to be the subject of fierce debate between Plaintiffs' and Defendants' counsel.  Given the difficulties presented by these issues, the fee requested is fair.

   5.   ***The contingent nature of the case and the financial burden carried by the plaintiffs***.  A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement.

   It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis

15

are accepted in the legal profession as a legitimate way of assuring

competent representation for plaintiffs who could not afford to pay

on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299

Lead Counsel received no compensation during the course of this litigation and incurred well over $167,000.00 dollars in expenses in litigation for the benefit of the Class.   Any fee award or expense reimbursement to Lead Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award.

6.   ***Awards made in similar cases***.  Lead Counsel seeks a fee equal to the Ninth Circuit's 25% benchmark for common fund cases.  "However, in most common fund cases, the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047 (approving 28% fee award in securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%")); *see also Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (approving 30% fee award); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) (approving 30% fee award).

In addition, many courts weigh the customary fee in the marketplace for non-class action contingency cases as a significant measure in approving fees. *See e.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular cases, but what the market pays in similar cases"); *In re Synthroid Mktg.*

16

*Litig.*, 325 F.3d 974-75 (7th Cir. 2003) ("A court must give counsel the market rate for legal services…..").

Although the Ninth Circuit has not adopted the marketplace analogy as a factor to consider in setting fees in class actions, the Circuit expressly recognized it as at least "probative" of what fee is reasonable. *Vizcaino*, 290 F.3d at 1049. If this was a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.[12]

A fee award must be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1296 (citation omitted). In view of the risks faced and overcome, the quality of the representation and the financial commitments of Lead Counsel in this case, and with all due and appropriate regard to the support for the fee by LIUNA — experienced institutional investor Lead Plaintiffs — an award of 25% of the Settlement Fund is entirely justified.

7.    ***A lodestar crosscheck confirms the reasonableness of the requested fee***.  Although courts in this Circuit apply the percentage approach to determine attorneys' fees in common-fund cases and do ***not*** perform a lodestar analysis, the award of 25% of the recovery is also reasonable if considering Lead Counsel's lodestar "as a cross-check on the percentage method. "[13]  *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 144 (W.D. Wash. 1994); *WPPSS*, 19 F.3d  1296-98.

---

[12]      *See, e.g., Ikon*, 194 F.R.D. at 194 ("in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *accord Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (concurring opinion); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action); *see also Kirchoff*, 786 F.2d at 323 (observing that 40% is the customary fee in tort litigation); *In re Pub. Serv. Co. of New Mexico*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992); ("[i]f this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery"); *see also In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990).

[13]      As the Ninth Circuit noted in *Vizcaino*:

17

Here, as calculated by and set forth in the Bacine Decl. Exhibit 2, Plaintiffs' Counsel's lodestar is $1,372,958.75.  Thus, Lead Counsel's request for an award of $2,500,000 results in a very reasonable multiplier of just 1.8.   Courts have routinely held that much larger positive multipliers are fair and reasonable.

In *Vizcaino*, 290 F.3d 1043, the Ninth Circuit affirmed a fee award that equaled 28% of the settlement fund and a multiplier of 3.65.  Indeed, in cases applying the lodestar method, fee'"multipliers of between 3 and 4.5 have been common.'"[14]  Further, Lead Counsel's lodestar does not account for the additional time that will be required of Lead Counsel to participate in the final approval process and to oversee the claims administration process and the distribution of the net settlement funds to eligible claimants.

8.      ***The reaction of the class***.  The reaction of the class to a proposed settlement and fee request is a significant factor in approving fees.  *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009), at \*7; *Omnivision*, 559 F. Supp. 2d at 1048.  Here, as of October 5, 2009, notices was mailed to 105,629 potential Class Members or their nominees and the Publication

---

"courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"….This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.…In common fund cases, 'attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'"

290 F.3d at 1051 (quoting *WPPSS*, 19 F.3d at 1300).

[14]     *Rabin v. Concord Assets Group, Inc.*, 1991 WL 275757, at \*2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4) (citation omitted); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation"); *see also In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at \*17 (S.D.N.Y. Nov. 12, 2004) (multiplier of 2.46); *In re Lucent Tech., Inc., Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) (multiplier of 2.13); *Kurzweil v. Philip Morris Cos., Inc.*, 1999 WL 1076105, at \*3 (S.D.N.Y. Nov. 30, 1999) (recognizing that multipliers of between 3 and 4.5 are common in federal securities cases).

18

Notice ("Summary Notice") was issued over *Business Wire*, *PR Newswire* and *Marketwire* on August 20, 25 and 31, 2009 respectively. *See* Sincavage Aff. ¶¶3-13. The Notice was also posted on websites, Joint Decl. ¶¶53-56. The Court-approved Notice informed Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund plus interest earned at the same rate and for the same period as earned by the Settlement Fund. The Notice further advised Class Members of their right to object to or opt out of the Settlement, the Plan of Allocation or the request for attorneys' fees and expenses. The deadline for submitting any objections or exclusion requests will expire on October 9, 2009. As of the date of this Motion, no Class Member has objected, and only two exclusion requests have been received (one being from a Class Member who had no recognized loss because she sold her ValueClick shares at a profit during the Class Period). Sincavage Aff. ¶14. This factor further supports the requested award of 25% of the Settlement Fund. *See Red Door Salons*, 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objections supports 28% award).

### E.   Public Policy Considerations Mandate the Award of Adequate Fees in Representative Actions So That Competent and Experienced Lawyers Will Undertake Such Representations

It merits repeating that the federal securities and corporate governance laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits are to be encouraged. *See Basic, Inc. v. Levinson*, 485 U.S. 224 (1988); *Bateman Eichler,* 472 U.S. 299; *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983); *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972); *Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971). Indeed, the ultimate effectiveness of these remedies may largely depend on the efficacy of the class

action as a representative litigation device.[15]  *See also Eltman v. Grandma Lee's, Inc.*, [1986-1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,798, at 93,907 (E.D.N.Y. May 28, 1986).

That those goals have been achieved here is beyond question.  A substantial recovery, via this settlement, has been obtained for Class members who were harmed by the alleged wrongdoing of the Defendants.  Despite the risks, a significant service has been provided to these investors — a demonstration that the protection provided by the federal securities laws is real and can provide benefits through the class representative litigation device.  Because of these risks, the result obtained and the other factors discussed herein, Lead Counsel respectfully requests the Court to award the fees requested.

## V.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

Lead Counsel incurred costs and expenses in an aggregate amount of $167,241.27 in prosecuting this action on behalf of the Class.  These expenses, broken down into separate categories, are set forth in Exhibit 3 to the Bacine Declaration submitted to the Court herewith.

The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.

---

[15]    *See* 3 Louis Loss, *Securities Regulation*, 1819 (2d ed. 1961):

Private lawsuits serve to further the objective of the federal securities laws which is to protect investors and consumers against fraudulent and other deceptive practices.  As a practical matter, those lawsuits can be maintained only if competent counsel can be obtained to prosecute them.  Competent counsel can be obtained if reasonable and adequate compensation for their services were awarded if a successful result is achieved.  To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.  The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and effectiveness of the Securities Acts.

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citations omitted).   Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs. *Id. See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens County, Okl.*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary in the representation' of those clients.") (citation omitted).   All of the various categories of expenses for which counsel seek reimbursement herein are the type of expenses routinely charged to hourly paying clients and therefore, should be reimbursed out of the common fund.

As set forth in the Bacine Declaration, (*see* ¶5, Exhibit 3), various types of expenses were paid or incurred.   A significant component (approximately $108,194.10) of expenses is the fees of the consultants/experts and investigators who assisted Lead Plaintiff in the areas, *inter alia*, of forensic econometric analysis, including issues of materiality, loss causation and damages and investigator fees regarding locating and interviewing potential witnesses.   These professionals were indispensable to the successful resolution of the litigation. Lead Counsel believes these expenses are reasonable and were necessarily incurred in obtaining this result for the Class.   These experts and investigators have been paid in full by Lead Counsel.

Other notable expenses include the costs of computerized research totaling $11,915.71 (Bacine Decl. ¶5, Ex. 3).   These are the charges for computerized factual and legal research services such as *Lexis-Nexis* and *Westlaw*.   It is standard

practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them in researching legal and factual issues. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996). Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). In approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub. nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged. The court also noted that fee-paying clients reimburse counsel for computerized legal and factual research. *Gottlieb*, 43 F.3d 474.

In addition, counsel were required to travel, especially given the need for court appearances in Los Angeles, two mediation sessions in San Francisco before Judge Infante at JAMS and witness interviews and confirmatory discovery projects, consequently incurring the related costs of airline tickets, meals and lodging. The expenses in this category - $16,122.96 - are reasonable in amount, and are properly charged against the fund created. *See In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Lead Counsel secured documents from ValueClick and the FTC. The replication of such documents, as well as voluminous court filed documents, publicly available documents and expert materials was necessary for the effective prosecution of the case. Included in the expenses is $1,206.17 and $13,687.00 respectively, for reimbursement of internal and external copying costs. Bacine Decl. ¶5, Ex. 3. Photocopying costs, including charges rendered by professional photocopying and document reproduction firms, are also customarily reimbursed in common cases. *See McDonnell Douglas*, 842 F. Supp. at 746. Duplication of

the thousands of documents obtained was necessary for the effective prosecution of the case.   There is no question that such discovery-related and necessarily-incurred fees and costs are properly charged against the fund created.[16]

And finally, the Court-approved Notice provided to potential Class Members informed them that Lead Counsel will apply for the reimbursement of litigation expenses paid or incurred in connection with the prosecution and resolution of the Litigation, in the approximate amount of $180,000.00, plus interest earned at the same rate and for the same period as earned by the Settlement Fund.  The amount of expenses now sought - $167,241.27 - is less than the amount included in the Notice.  The deadline for objecting to the fee and expense application or opting out of the Settlement expires on October 9, 2009.  As of the filing date of this Motion, no Class Member has objected, and only two requests for exclusion have been received.  Sincavage Aff. ¶14.

//
//
//
//
//
//
//
//

---

[16] *See also, Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and remanded on other grounds*, 461 U.S. 952 (1983); *see also Red Door Salon*, 2009 WL 248367, at *7 (approving of expenses relating to "online legal research, travel, postage and messenger services, phone and fax charges, copying, court costs, and the costs of travel"); *Omnivision*, 559 F. Supp. 2d at 1048 (approving of expenses relating to "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case").

23

1

2       **VII.   CONCLUSION**

3               Assuming final approval, the successful result achieved in this action is the

4       culmination of Lead Counsel's persistent, hard work in pursuing this litigation.

5       For their efforts, Lead Counsel requests that the Court approve its fee and expense

6       application and enter an order awarding an attorneys' fee of 25% of the Settlement

7       Fund, plus the interest earned thereon, at the same rate and for the same period as

8       that earned on the Settlement Fund until paid, and approve reimbursement of Lead

9       Counsel's expenses and costs in the amount of $167,241.27.

10      DATED: October 5, 2009                    Respectfully submitted,
                                                  BARRACK, RODOS & BACINE
11                                                STEPHEN R. BASSER

12

13                                                    /s/ Stephen R. Basser
                                                  STEPHEN R. BASSER
14
                                                  One America Plaza
15                                                600 West Broadway, Suite 900
                                                  San Diego, CA  92101
16                                                Telephone:  (619) 230-0800
                                                  Facsimile:   (619) 230-1874
17
                                                  BARRACK, RODOS & BACINE
18                                                LEONARD BARRACK

19                                                DANIEL E. BACINE

20                                                MARK R. ROSEN
                                                  CHAD C. CARDER
21
                                                      /s/ Mark R. Rosen
22                                                MARK R. ROSEN

23                                                3300 Two Commerce Square
                                                  2001 Market Street
24                                                Philadelphia, PA 19103
                                                  Telephone:  (215) 963-0600
25                                                Facsimile:   (215) 963-0838

26                                                Lead Counsel for Lead Plaintiffs and
                                                  the Proposed Settlement Class
27

28

                                        24